**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY P. URBAN, ) | CASE NO. 1:13-CV-01136 |
| ) | |
| Plaintiff, ) | JUDGE WELLS |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Timothy P. Urban ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423 ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REMANDED for proceedings consistent with this Report and Recommendation.

**I.  PROCEDURAL HISTORY**

On January 11, 2010, Plaintiff filed an application for POD and DIB, alleging a disability onset date of February 13, 2009.  (Transcript ("Tr.") 19.)  The claim was denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ"). (*Id.*) On September 22, 2011, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On November 8, 2011, the ALJ found Plaintiff not disabled. (Tr. 16.) On April 9, 2013, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.)

On May 20, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 12, 13, 14.)

Plaintiff asserts the following assignments of error: (1) The ALJ did not properly evaluate Plaintiff's subjective complaints of pain; and (2) the ALJ failed to obtain required vocational expert testimony.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in September 1960 and was 48-years-old on the alleged disability onset date. (Tr. 24.) He had a high school education and was able to communicate in English. (Tr. 25.) He had past relevant work as a truck driver. (Tr. 24.)

### B. Medical Evidence

#### 1. Medical Reports

In 2009, Plaintiff underwent diagnostic testing to determine the cause of his racing heart and severe shortness of breath with activity. (Tr. 220-223.) A pulmonary

function test revealed a severe obstructive ventilatory impairment, possible upper airway obstruction, and significant but incomplete response to bronchodilator therapy. (Tr. 223.) The findings were consistent with a diagnosis of chronic obstructive pulmonary disorder (COPD). (*Id.*)

At an appointment with Bruce W. Arthur, M.D., in February 2010, Plaintiff demonstrated improved breathing after steroid burst treatment as well as less frequent coughing. (Tr. 226.) A computed tomography (CT) scan showed no nodules or masses and only emphysematous changes predominantly in the upper lung fields bilaterally. (Tr. 228.) Dr. Arthur's assessment included COPD. (Tr. 229.) Dr. Arthur discussed with Plaintiff the risks of continued tobacco use, including exacerbation of lung symptoms. (*Id.*)

In June 2010, Plaintiff reported improvement to Dr. Arthur, including good responses to his medications when taken. (Tr. 272.) Plaintiff also reported difficulty obtaining Symbicort due to cost, and stated that he continued to smoke a half a pack of cigarettes a day. (Tr. 272-274.)

In March 2010, Dr. Arthur opined that in his experience, patients with Plaintiff's severity of COPD have difficulties with performing tasks as part of a job for extended periods of time. (Tr. 278.)

In December 2010, Plaintiff reported to Dr. Arthur that his condition had improved since his last visit and that, other than having some difficulty with the cold weather, he was doing well. (Tr. 304.) Dr. Arthur noted that Plaintiff's COPD was likely becoming worse given his continued tobacco use. (Tr. 307.) Nonetheless, Dr. Arthur noted that Plaintiff could attempt to obtain employment given the improvement he had

3

made on his medication. (*Id.*)

In April and June 2011, Plaintiff was treated for neck pain and denied any chest pain or difficulty breathing. (Tr. 290, 355.) Plaintiff reported that he was using inhalers for his COPD and was stable on them, and that he continued to smoke cigarettes. (*Id.*) Imaging studies confirmed that Plaintiff had cervical radiculopathy. (Tr. 292.)

On July 26, 2011, Mike Steinmetz, M.D., performed a decompression of Plaintiff's C5-6 disc. (Tr. 317.) A month later, Dr. Steinmetz noted that Plaintiff had no pain and that he had intact motor function. (*Id.*) Dr. Steinmetz noted that Plaintiff should increase his activity but stay off work for four more weeks. (*Id.*)

## 2. Agency Reports

On March 11, 2010, reviewing state agency consultant Tynetta Miller opined that Plaintiff could perform light work but must avoid all exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 263-286.) On June 20, 2010, state agency physician Michael Stock, M.D., approved and affirmed Ms. Miller's opinion. (Tr. 277.)

## C. Hearing Testimony

### 1. Plaintiff's Testimony

Plaintiff testified that he began seeking medical care at Metro Health after experiencing heart palpitations and heart racing. (Tr. 45.) He was told that his lungs were depleted and that he was not receiving enough oxygen. (*Id.*) Plaintiff testified that he used different inhalers and breathing apparatuses to treat his condition, and that he had improvement with Symbicort. (*Id.*) He was often tired and fatigued and had a hard time breathing when doing lifting or prolonged walking. (*Id.*) On a good day, Plaintiff could walk

about a block before having to stop to catch his breath. (Tr. 46.) He slept well at night but took a two-hour nap everyday around 2:00 p.m. (*Id.*) Plaintiff began to feel less mentally alert and more sluggish after taking Albuterol and his inhalers. (Tr. 47.)

Plaintiff also had problems with radiculopathy and issues with his neck. (*Id.*) He had pain in his left shoulder and left bicep and into his fingers. (Tr. 48.) Plaintiff had surgery in July 2011 and testified that he has not experienced any pain since then. (*Id.*)

Plaintiff testified that his breathing was a lot worse before he started using his inhalers. (Tr. 51.) He noted, "[n]ow I'm on inhalers, which cause me to breathe a lot better." (*Id.*) Plaintiff did not believe he could sustain a 40-hour workweek because of his breathing problems. (*Id.*) He testified that when he sat down he felt fine, but physical movement, like walking, made it difficult for him to breath. (*Id.*)

### 2. VE Testimony

Mary, McKeever, a vocational expert, testified at Plaintiff's hearing. The VE testified that Plaintiff had past work as a truck driver, which was at the medium strength range and at a skill level of 4. (Tr. 55.) The ALJ asked the VE to consider a hypothetical individual with the same age, education, and past work as Plaintiff who could lift 20 pounds occasionally and 10 pounds frequently, could stand and walk for six hours in an eight-hour workday, could sit for six hours in an eight-hour workday, would have unlimited ability to push and pull, and must avoid all exposure to fumes, odors, dust, gases, and poor ventilation. (Tr. 56.) The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work, but could perform light jobs such as a truck dispatcher and truck driver's helper. (Tr. 56-57.)

5

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since February 13, 2009, the alleged onset date.

3. The claimant has the following severe impairments: chronic obstructive pulmonary disorder (COPD) and cervical radiculopathy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he must avoid all exposure to fumes, odors, gases, and poor ventilation.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born in September 1960 and was 48-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Act, from February 13, 2009, through the date of this decision.

(Tr. 21-26.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by

substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy,* 594 F.3d at 512.

> B. Plaintiff's Assignments of Error
>
> **1. The ALJ Did Not Properly Evaluate Plaintiff's Subjective Complaints of Pain.**

Plaintiff takes issue with the ALJ's assessment of Plaintiff's credibility regarding his complaints of pain. According to Plaintiff, the ALJ failed to discuss the regulatory factors regarding the evaluation of Plaintiff's subjective complaints and instead merely summarized Plaintiff's testimony with no specific rationale. The Commissioner responds that the ALJ carefully considered Plaintiff's subjective complaints when determining his RFC and that the substance of the ALJ's decision supports her credibility finding.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983). The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain

specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints. See *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.* In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.[1]  See *Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. §

---

[1] These factors include the following:
>    (1) the claimant's daily activities;
>    (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
>    (3) precipitating and aggravating factors;
>    (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>    (5) treatments other than medication that the claimant has received to relieve the pain; and
>    (6) any measures that the claimant takes to relieve his pain.

404.1529(c)). Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors. *Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in her assessment of Plaintiff's condition. (Tr. 22-24.) The ALJ examined Plaintiff's daily activities, his treatments and his responses to those treatments, the clinical examination findings, and the physician statements of record. (*Id.*) Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's complaints of pain, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent that they were inconsistent with his RFC. (Tr. 24.) Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, she determined that her RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence. In finding that Plaintiff was capable of performing a limited range of light work, the ALJ discussed the following evidence:

- In December 2009, Plaintiff underwent pulmonary function testing and achieved an FEV1 of 1.74 after bronchodilation and an FVC of 4.35 with normal blood gases. (Tr. 22, 219-221.)

- In February 2010, Plaintiff reported improved breathing due to treatment with a steroid burst and less frequent coughing. (Tr. 23, 223-229.)

- In June 2010, Plaintiff was having a good response to his medications,

  although he continued to smoke, and was "not interested in quitting at this time" despite having been lectured about the risks of continuing tobacco use including exacerbation of lung symptoms. (Tr. 23.)

•  In December 2010, Plaintiff's pulmonary function testing demonstrated better functioning than in December 2009, his COPD was noted to be impacted by his continued tobacco use, and his doctor stated that he could "attempt to get employment given the improvement" on medication. (Tr. 22, 302-307.)

•  In April and June 2011, when treated for neck pain, Plaintiff had denied any difficulty breathing. (Tr. 23, 290, 355.)

•  Although Plaintiff's cervical radiculopathy was confirmed by imaging studies, on examination in April 2011, Plaintiff had intact sensation and strength and he stated that activity did not increase his pain. (Tr. 24, 292, 298, 355). At his hearing, Plaintiff also stated that he no longer felt any pain. (Tr. 24, 48.)

•  A month after undergoing a decompression of the C5-6 disc, Dr. Steinmetz noted that Plaintiff had no pain, intact motor function, and needed to increase his activity. (Tr. 24, 317.)

•  Plaintiff's doctor encourages him to get more activity and go back to work, which suggests that Plaintiff's COPD is not as severely limiting as he alleges. (Tr. 24.)

Thus, the ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record, including Plaintiff's own testimony, and found that Plaintiff's subjective complaints were inconsistent with the objective evidence. This inconsistency is an appropriate basis for an adverse credibility finding. *See Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")

  Furthermore, with regard to Plaintiff's credibility, the ALJ specifically noted:

The claimant's allegations are not fully credible. His primary complaint is that he is short of breath, but the record shows improvement with

> treatment, and no treatment since December of 2010. The claimant's treatment was hampered by limited medicine, which the claimant alleges is due to cost. The claimant was working part time, and continued to buy cigarettes. In addition, the lack of a Title XVI claim implies that he has the financial resources to purchase his medication. His decision to buy cigarettes instead of Symbicort shows a lack of commitment to treatment. His smoking also is noncompliant, and indeed only worsens his COPD. In June of 2011, the claimant was again smoking a full pack of cigarettes a day. (exh. 10F p40) It is hard to fully accept the claimant's allegations of inability to breath when he continues to smoke. Finally, his doctor encourages him to get more activity and to go back to work, which shows that his COPD is not as limiting as he alleges.

(Tr. 24.) Therefore, Plaintiff is incorrect in arguing that "[t]he ALJ attempts to discredit the Plaintiff based on a singular point that the Plaintiff is a smoker that buys cigarettes." (Plaintiff's Brief ("Pl.'s Br.") 5.) While the ALJ did find that Plaintiff's subjective complaints about his COPD were not fully credible because he continued to spend money on cigarettes rather than medication and continued to smoke against medical advice, the ALJ also discussed how Plaintiff continually improved with treatment and how his doctor encouraged him to get more activity and return to work. Those reasons, coupled with the ALJ's discussion of other evidence in the record, are sufficient to support the ALJ's adverse credibility finding. For the foregoing reasons, the ALJ adequately conducted a proper pain and credibility analysis, and Plaintiff's first assignment of error does not present a basis for remand.

### 2. The ALJ Failed to Obtain Required Vocational Expert Testimony.

Plaintiff argues that the ALJ erred in finding that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. At the fifth step of the sequential analysis, the Commissioner bears the burden of establishing that, given a claimants age, education, work experience, impairments, and limitations, there

13

exists work in the national economy that the claimant can perform.  *Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990)*.  The Commissioner may meet this burden by reference to the Medical Vocational Guidelines ("the grids") unless the claimant suffers from nonexertional limitations that significantly limit the range of work permitted by his exertional limitations.  *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987).  In other words, "where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform."  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008).  "A vocational expert should be consulted when a claimant has severe combined exertional and nonexertional limitations."  *Ridge v. Barnhart*, 232 F. Supp. 2d 775, 792 (N.D. Ohio 2002).

Here, the VE testified that even with his limitations, Plaintiff could perform two jobs that existed in the national economy.  According to the VE, Plaintiff could work as a truck dispatcher (D.O.T. #919.162-810) and a truck driver helper (D.O.T. #905.634-010).  (Tr. 56-57.)  The VE described both jobs as "light work," and noted that the truck driver helper position was SVP 4 and the truck dispatcher position was SVP 5.[2]  (Tr. 57.)  In her decision, the ALJ noted that the VE's testimony conflicted with the Dictionary of Occupational Titles ("D.O.T.").  (Tr. 25.)  "[The D.O.T.] does list a Truck

---

[2]  SVP ratings indicate how long it takes a worker to learn how to do his or her job at an average performance level.  A rating of SVP 4 means over three months up to and including six months is the amount of training required to learn the job, and a rating of SVP 5 means over six months up to and including one year is the amount of training required to learn the job.

14

Driver Helper job under (D.O.T. #905.687-010), but lists this job as SVP2 and at the heavy exertional level.  There are dispatcher jobs under different codes that are SVP5 and performed at Light, but the claimant does not have the training or experience for direct entry into these jobs."  (*Id.*)  Because the VE's testimony was not consistent with the D.O.T., the ALJ disregarded it.  (Tr. 26.)

The ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, using only Medical Vocational Rules 202.21 and 202.14.  (Tr. 25.)  But the ALJ found that Plaintiff had a *nonexertional* limitation:  Plaintiff must avoid all exposure to fumes, odors, dusts, gases, and poor ventilation.  (Tr. 22.)  *See* 20 C.F.R. § 404.1569a(c)(1)(v) ("Some examples of nonexertional limitations or restrictions include . . . [y]ou have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes.").  The ALJ explained that "[a]s the claimant has only an environmental restriction, the occupation base for light, unskilled work is not significantly reduced."  (Tr. 25.)  The Commissioner argues that the ALJ was correct in drawing this conclusion, as Social Security Ruling 85-15 explains that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."  S.S.R. 85-15, 1985 WL 56857, at *8 (S.S.A.).  S.S.R. 85-15 further states, however, that "[w]here an individual can tolerate *very little* noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."  *Id.* (emphasis added).  Here, the ALJ found

15

that Plaintiff must avoid *all* exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 22.) Thus, pursuant to S.S.R. 85-15, the impact of Plaintiff's non-exertional limitations would be considerable rather than minimal, as the ALJ mistakenly concluded.[3]

In short, the ALJ's step five finding is not supported by the record. As substantial evidence does not support the ALJ's total reliance on the grids to determine work that existed in significant numbers in the national economy, the Magistrate Judge recommends that the Commissioner's final decision be reversed and remanded so that an ALJ may obtain the testimony of a vocational expert upon which to base a step five finding.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REMANDED for proceedings consistent with this Report and Recommendation.

---

[3] The Commissioner argues that the record demonstrates that Plaintiff can tolerate more than minimal amounts of pulmonary irritants, given that he chooses to regularly smoke cigarettes. The ALJ, however, clearly found that Plaintiff must avoid *all* exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 22.) Thus, based on the ALJ's decision, Plaintiff's environmental restriction is more than minimal, and relying on other information in the record to find otherwise would require this Court to engage in the *post hoc* rationalization that case law clearly prohibits. "[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) (citation omitted)).

16

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: February 6, 2014

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).